Gen. 295]													295

**STATE'S ATTORNEYS**

**COUNTIES – BUDGETARY ADMINISTRATION – APPROPRIATIONS – NATURE OF COUNTY FUNDING OBLIGATION**

July 11, 1995

*The Honorable Jack Johnson*
*State's Attorney for Prince George's County*

You have requested our opinion whether the budget adopted by Prince George's County for fiscal year 1996 unlawfully interferes with your discretion to prosecute crimes committed in the county. You have described in detail the severe impact of this budget on your prosecutorial function. In your view, the budget falls so short of your needs that it "would seriously undermine the ability of [your] office to prosecute offenses within a wide range of criminal categories."

For its part, the County has suggested that the budget for your office maintains funding at a reasonable level, permitting necessary prosecutorial functions to be performed. In the County's view, your office can cut positions and operating expenses not directly associated with the prosecutorial function.

This opinion cannot resolve a disagreement of this kind. Instead, we shall set out the legal framework and offer a conclusion based on your assessment of the budget's effect. At the same time, we strongly urge your office and the County to renew your efforts to reach a compromise. Litigation should be a last resort.

For the reasons stated below, we conclude as follows: A county must provide the State's Attorney with sufficient resources so that the State's Attorney retains prosecutorial discretion for all significant offenses. To the extent that the budget provided to your office compels you to forgo investigations and prosecutions for several significant types of offenses, it falls short of the legal requirement imposed on Prince George's County.

**I**

**Impact of Fiscal Year 1996 Budget**

Prince George's County is experiencing severe fiscal stress. As a result, the County adopted a budget for fiscal year 1996 that reflects significant reductions in many areas.

The Office of the State's Attorney has been hard-hit. For fiscal year 1995, the office's budget was $5,671,399, an amount that supported 128 staff positions. Because of increased workload, your office requested an increase of approximately 9.4 percent. The budget for your office approved by the County Executive and County Council reflects an 11 percent *decrease* from the prior fiscal year.[1]

Your letter to us describes the impact of the budget cut as follows:

> Based on current workload, which has increased approximately 20 percent during the first quarter of 1996, the proposed budget cuts and the resulting drastic reduction in staff (approximately 25) would seriously undermine the ability of this office to prosecute offenses within a wide range of crime categories.
>
> In the District Court Division, for example, we will not be able to prosecute small drug cases, domestic violence cases, and a number of other matters. In the Juvenile Division, which now has a 30 day turn-around, we will be unable to prosecute drug

---

[1] The following table summarizes the budgetary picture:

|                    | Amount      | Variance From FY 1995 |
|--------------------|-------------|-----------------------|
| FY 1995 allocation | $5,671,399  | ---                   |
| FY 1996 request    | $6,203,804  | +$532,405             |
| FY 1996 allocation | $5,038,611  | -$632,788             |

cases, car jackings, handgun offenses, petty thefts, car thefts and many other cases affecting the personal safety of citizens in Prince George's County. In the Criminal Trials Division, simple robberies, property offenses and other matters could not be prosecuted. In the Homicide/Narcotics Division, we will not be able to pursue asset forfeitures, nuisance abatement, complex drug wiretap cases, and white collar crimes.

Information that you provided us also indicates that the reduced budget would require personnel reductions of such a magnitude that, in the Juvenile and District Court Divisions of your office, there would no longer be enough attorneys to cover all of the courtrooms.

The impact that you describe would significantly alter the manner in which you manage your office. In order to concentrate resources on prosecution of the gravest offenses, you would be compelled to forgo prosecution in entire categories of offenses. You would no longer be able to exercise discretion to prosecute certain cases within these categories; instead, you would be compelled by resource constraints to forgo *all* prosecutions in these categories.

The County Attorney paints a different picture. In a letter to us dated July 3, 1995, the County Attorney describes a series of reductions in the State's Attorney's budget, recommended by the County's Office of Management and Budget, "focused on reductions in positions and operating expenses not directly associated with the prosecutorial function."[2]

An Attorney General's opinion cannot sort out factual or policy disagreements of this kind. Our general practice is to offer our views on the law based on the facts presented to us in the opinion request, and we shall do so here.

---

[2] These recommended reductions involve, among others things, a one-third cut in law clerk positions and a twenty percent cut in secretarial staffing.

## II

### Duties of the State's Attorney

Under Article V, §9 of the Constitution, a State's Attorney "shall perform such duties ... as shall be prescribed by the General Assembly." The General Assembly's prescription of duties is a most general one: "The State's Attorney for each county and the City of Baltimore shall, in such county or city, prosecute and defend, on the part of the State, all cases in which the State may be interested ...." Article 10, §34 of the Maryland Code. This unfettered grant of authority has been characterized as a "prerogativ[e] of the office." *Babbitt v. State*, 294 Md. 134, 138, 448 A.2d 930 (1982). The General Assembly's decision not to enumerate or define the powers of the State's Attorney means that "'State's Attorneys are vested with the broadest official discretion.'" *State v. Romulus*, 315 Md. 525, 537, 555 A.2d 494 (1989) (quoting *Murphy v. Yates*, 276 Md. 475, 489, 348 A.2d 837 (1975)). The State's Attorney's prerogative to decide whether to prosecute someone suspected of having committed a criminal offense is so important, as a matter of public policy, that it is protected by absolute immunity from federal civil rights liability. *See Imbler v. Pachtman*, 424 U.S. 409 (1976); *Doe v. Mayor and City Council*, 745 F. Supp. 1137 (D. Md. 1990).

Except by authorization of the General Assembly, no public official may interfere with the State's Attorney's exercise of discretion. *See Murphy v. Yates*, 276 Md. at 494-95.[3] *See also Hicks v. Orange County Bd. of Supervisors*, 138 Cal. Rptr. 101, 108 (Cal. App. 1977) ("the discretionary power vested in the District Attorney to control the institution of criminal proceedings may not be ... conferred on another by [county officials]").

---

[3] At the time that *Murphy v. Yates* was decided, the Constitution prohibited even the General Assembly from interfering with the common law duties of the State's Attorney. Thus, the General Assembly's attempt to vest certain criminal enforcement responsibilities in the State Prosecutor was held unconstitutional. *Murphy v. Yates,* 276 Md. at 494. In light of the subsequent amendment of Article V, §9 of the Constitution, the General Assembly now has authority to transfer duties from the State's Attorney to another official. *See* Article 10, §33B (enforcement responsibilities of the State Prosecutor).

## III

### Budgetary Responsibility of the County

Under Article 10, §40(a), the counties are required to pay the salaries and other "office ... expenses" of the State's Attorneys:

> The State's Attorneys in the several counties of the State shall receive annually the respective salaries set forth for performing duties required of them by their respective public local laws and the public general laws, and such expenses as are provided by law and by the current practice in several counties. The State's Attorneys shall receive annual payments for office, traveling and other expenses. All payments for salaries and expenses shall be made by the respective counties in equal monthly installments unless otherwise specified.

Elaborating upon this general provision, Article 10, §40 goes on to itemize specific funding allocations for each county. In Prince George's County, "the State's Attorney may appoint two deputy state's attorneys and 54 assistant state's attorneys." Article 10, §40(q)(2). The salaries of these deputies and assistants "shall be within the discretion of the State's Attorney," up to caps set out in the statute. Article 10, §40(q)(3) and (4).

Under Article 24, §8-101(2), the State's Attorney's office for each county "is subject to the budget and fiscal policies and purchasing laws of the county in which it is located." However, this provision does not authorize counties to avoid the funding obligation otherwise imposed under Article 10, §40. Rather, Article 24, §8-101 requires the State's Attorney's office and other county-funded State entities to submit to county budget procedures, not county budget control. *See Rucker v. Harford County*, 316 Md. 275, 288, 558 A.2d 399 (1989); 76 *Opinions of the Attorney General* 194 (1991) ; 73 *Opinions of the Attorney General* 92 (1988).

Disputes between State's Attorneys and county officials over the sufficiency of county financial support are not unprecedented. Invariably, these disputes have been resolved through discussion and compromise, as they should be. We are aware of no court decision that interprets the pertinent language in Article 10, §40.

In one prior opinion, we addressed "the relationship between the budget and fiscal policies of [a] county and the conduct of the office of State's Attorney, as this relationship is determined by State law." 74 *Opinions of the Attorney General* 263 (1989). The specific question was a narrow one: whether Howard County's chief budgetary official had authority to disapprove the State's Attorney's request for certain out-of-state staff training.

Relying on an earlier opinion about the application of county budgetary procedures to a circuit court, we observed that "problems of a constitutional dimension would arise if a county exercised this grant of power so as to prevent its State's Attorney from carrying out his or her constitutional responsibilities." 74 *Opinions of the Attorney General* at 266. The county was obliged, we wrote, "to refrain from exercising its supervisory power over fiscal matters if its supervision would prevent the State's Attorney's office from obtaining 'adequate and suitable goods and services' to meet the office's needs." 74 *Opinions of the Attorney General* at 266 (quoting 73 *Opinions of the Attorney General* at 96).[4]

We concluded our opinion with this description of the county's obligation to yield to the State's Attorney's assertion about the necessity of an expenditure:

---

[4] In the earlier opinion, we had concluded that a county may not apply its budget process so as to "deprive the court of adequate and suitable facilities, equipment, or personnel reasonably necessary to carry out the court's judicial function." 73 *Opinions of the Attorney General* at 92. *See also, e.g. Gary City Court v. City of Gary*, 489 N.E.2d 511, 512 (Ind. 1986) (local government must appropriate funds "necessary to maintain the court at a degree of efficiency necessary to discharge its duties and neither extravagant, arbitrary nor unwarranted"). *See generally* Gary D. Spivey, Annotation, *Inherent Power of Court to Compel Appropriation or Expenditure of Funds for Judicial Purposes*, 59 A.L.R.3d 569 (1974).

In our view, a disagreement of this kind should be resolved in favor of the State's Attorney if the State's Attorney asserts that application of the county's fiscal procedures would pose unacceptable interference with the conduct of the State's Attorney's office. Were it otherwise — that is, if a county were free to insist upon its view of the necessity of a purchase of goods or services — the threat to the conduct of the State's Attorney's office that we regard as constitutionally unacceptable will have materialized.

74 *Opinions of the Attorney General* at 266-67.

The 1989 opinion did not directly address your question, however, because in that instance the budget of the State's Attorney's office was sufficient to pay for the disputed item of expenditure. Our opinion expressly avoided discussing the "circumstances, if any, in which a county might be compelled to provide nonbudgeted funds to a State's Attorney's office." 74 *Opinions of the Attorney General* at 264 n.1.

In another opinion, this office did comment on a budgetary "stalemate" between a sheriff and a county.[5] In 60 *Opinions of the Attorney General* 647, 657 (1975), Attorney General Burch was asked to decide the manner in which "a stalemate [can] be resolved between the sheriff who deems both additional personnel and additional deputies to be necessary for the effective performance of his duties but cannot make the appointments, and the county commissioners who refuse to authorize the funds." After admonishing the sheriff and the commissioners "to make honest attempts to resolve their differences through negotiation and compromise," Attorney General Burch fashioned the following balancing test: "Since the duties of the sheriff clearly cannot be abridged by action of the county commissioners, we believe that the county has an implied obligation to provide the sheriff, within reasonable limits, with the necessary funds to adequately discharge his constitutional and statutory obligations. Conversely, we believe

---

[5] Counties are obliged by statute to pay the salaries of the sheriff and deputies and "necessary expenses." §2-309 of the Courts Article, Maryland Code.

that the sheriff has an obligation to realistically assess the needs of his office and to request only such additional funding for personnel as he deems absolutely necessary for the adequate performance of his functions." 60 *Opinions of the Attorney General* at 657.[6]

As far as we are aware, only one out-of-state decision has addressed local funding of a prosecutor's office. In *Reed v. Washington Parish Police Jury*, 518 So. 2d 1044 (1988), the Louisiana Supreme Court held that a parish (the Louisiana equivalent of a county) had a duty under the pertinent statute to fund a local prosecutor at the level requested by the prosecutor. Although much of the decision is of little interest, focusing as it does on the particulars of the Louisiana statute, some elements of the Louisiana court's analysis are pertinent. The objective of the Louisiana funding provision, like the Maryland provision, is "to insure [that] the basic funding of the district attorney will not be impaired":

---

[6] This passage from Attorney General Burch's opinion was quoted by the Court of Appeals in *Rucker*, seemingly with approval. *See* 316 Md. at 288 n.7. This approach is also consistent with a circuit court decision requiring a county to pay for certain operating expenses of a local election board. *State Admin. Bd. of Elec. Laws v. Talbot County*, No. CG1622 (Cir. Ct. for Talbot Co. May 27, 1992) (applying Article 33, §2-4(b) of the Code, which requires county payment of "necessary and reasonable expenses"). A similar balancing test was recently set forth in a letter of advice from the Counsel to the General Assembly concerning all locally funded State officials:

> The line between permissible and impermissible [local] budget control would undoubtedly be a factual question that would turn on the reasonableness of the budget cutting device chosen, the extent of any reduction in appropriation, and the resulting impact on performance of constitutional duties. To put the matter directly, government and governmental officers, including elected constitutional officers, must meet their obligations with reduced funding. There is, of course, a funding level beyond which it is impossible to go and still have these offices meet their obligations.

Letter to William S. Ratchford, II, Director of Fiscal Services, from Assistant Attorney General Robert A. Zarnoch at 5 (October 30, 1992).

"Because of the importance of the constitutional function performed by the district attorney's office, it is imperative that there be a reliable source of funding to ensure the operation of the office." 518 So. 2d at 1048. The Louisiana court also imported into its analysis the familiar concept of reasonableness: Although the parish was legally obliged to fund the district attorney's expenses, that duty "is limited by the standard of reasonableness.... Accordingly, the budget request of the district attorney must be legitimate in that it is related to the function of his office. Also it must be quantitatively reasonable." 518 So. 2d at 1049.

No precise formula can be laid down for the reasonableness of a State's Attorney's budget request. We think it evident, however, that a State's Attorney must be provided with sufficient resources to carry out the core function of the State's Attorney's office – to determine whether to prosecute any given offender, for any type of crime.

Of course, prosecutorial discretion is inevitably related to resource availability. The bigger the State's Attorney's budget, the more cases the State's Attorney is able to prosecute. Conversely, limited resources limit discretion. To borrow Attorney General Burch's formulation, any State's Attorney "has an obligation to request only such ... funding ... as he deems absolutely necessary for the adequate performance of his functions." 60 *Opinions of the Attorney General* at 657.

But surely a State's Attorney's budget request is realistic when it does no more than preserve the State's Attorney's ability to exercise that discretion within every significant category of criminal offenses, to engage in standard investigative procedures like wiretaps, and to staff all courtrooms. In our view, a court would find unreasonable, and therefore in violation of the statute, a budget allocation so insufficient as to preclude the State's Attorney from, for example, assigning personnel to handle such significant matters as domestic violence cases and robberies.

The point can be illustrated by a hypothetical: Suppose that a State's Attorney announced, as a matter of policy, that the State's Attorney would no longer prosecute anyone in a domestic violence or robbery case. Such a policy might well amount to "wilful neglect of duty" and therefore subject the State's Attorney to removal from office. Article IV, §7 of the Constitution. *See State ex rel. Brickell v. Martin*, 61 So. 491, 492 (Ala. 1913) ("'willful neglect of duty' ...

is an intentional failure or omission of an officer to perform a plain and manifest duty which he is able to perform when he omits to do so"). A county may not, through its budget decisions, force a State's Attorney to take steps that, if done willfully, would breach the State's Attorney's constitutional duty.

We are not suggesting that a State's Attorney may ignore a county's dire fiscal situation. To the contrary: If the matter were litigated – a circumstance that we assuredly hope can be avoided – a court would undoubtedly give "[d]ue consideration ... to any adverse effect which [a court's funding] order would have on specific fiscal and other interests of the unit from which the funds would come." *Gary City Court v. City of Gary*, 489 N.E.2d 511, 513 (Ind. 1986).

Yet a county may not view the State's Attorney's Office as simply one among many similarly situated competitors for limited resources. Because the General Assembly has mandated funding of the State's Attorney's office at a reasonable level, the funding needs of that office take precedence over county agencies, even if the county would prefer to allocate proportionally greater funding to those other functions.[7]

---

[7] "[A] municipality has no vested right in or to its public funds such as to preclude legislative interference. Accordingly, statutory charges imposed upon a municipality by the legislature take precedence over a more permissive use of municipal funds." 2 Eugene McQuillan, *Municipal Corporations* §4.140, at 289 (3d ed. 1988). *See also id*. at §4.165. *See generally Howard County v. Matthews*, 146 Md. 553, 561, 127 A. 118 (1924). Indeed, even a charter-imposed tax cap might have to yield to funding needs imposed by State law: "County governments are required by state law to provide many public services such as public education, police and fire protection services, water and sewage services, etc. If it is ... demonstrated in a particular case that a local limitation on property tax revenues so hampers a county government that it cannot perform the duties required under state law, a tax limitation charter provision may well be found to be invalid as applied." *Board of Supervisors of Elections v. Smallwood*, 327 Md. 220, 243-44, 608 A.2d 1222 (1992).

## IV

## Conclusion

In summary, it is our opinion that Prince George's County must provide the State's Attorney for Prince George's County with sufficient resources so that the State's Attorney is not altogether deprived of a significant aspect of the State's Attorney's prosecutorial discretion.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
*Opinions & Advice*